IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:12-cv-22072-KMM

| | |
|---|---|
| ODEBRECHT CONSTRUCTION, INC., a Florida Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ANANTH PRASAD, in his official capacity as Secretary of the Florida Department of Transportation, | ) ) ) ) |
| Defendant. | ) ) ) |

## AMENDED COMPLAINT[1]

Plaintiff Odebrecht Construction, Inc., a Florida Corporation hereby sues Ananth Prasad, in his official capacity as Secretary of the Florida Department of Transportation, and alleges the following:

## NATURE OF THE CLAIM

1.   This is an action for declaratory and injunctive relief to declare unconstitutional and unenforceable Committee Substitute for Committee Substitute for House Bill No. 959, "An act relating to state and local government relations with Cuba or Syria," Chapter 2012-196, Laws of Florida, which amends Section 287.135, Florida Statutes. The amendments to Section

---

[1] This Amended Complaint is substantively identical to the original complaint, with the sole exception of a different table in paragraph 25.

1

287.135 are invalid under the U.S. Constitution and inoperable by the statute's own terms. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983, and relief is sought under that section and under 42 U.S.C. § 1988 and 28 U.S.C. §§ 2201 and 2202.

## JURISDICTION AND VENUE

2. Jurisdiction lies in this Court pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), -(b)(2), and -(c)(2) because Defendant resides in the District for purposes of venue, and because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## PARTIES

4. Plaintiff Odebrecht Construction, Inc. is a Florida corporation that maintains its principal place of business in Coral Gables, Florida.

5. Defendant Ananth Prasad is sued in his official capacity as Secretary of the Florida Department of Transportation ("FDOT"), a governmental entity established by the laws of the State of Florida. Secretary Prasad performs official duties and substantial business in the Southern District of Florida. The Southern District of Florida is the location of two of the seven FDOT District Offices (District 4: Southeast Florida, and District 6: South Florida). FDOT is a decentralized agency, and each District Office is responsible for acquiring commodities and contractual services, under the direction and guidance of Secretary Prasad. As Secretary of FDOT, Prasad is charged with implementing and enforcing Section 287.135, Florida Statutes, with respect to FDOT contracts with a value of one million dollars or more, which are within the scope of the unconstitutional provisions that are the subject of this action.

2

## FACTS

A. <u>Federal Sanctions Regarding Cuba</u>

6. Pursuant to statutory mandate and presidential authority, the United States maintains a complex and comprehensive set of economic sanctions against Cuba. Key sources of federal law affecting the existence and scope of those sanctions include, but are not limited to, the Trading with the Enemy Act of 1917, 50 U.S.C. App. § 5(b); the International Emergency Economic Powers Act of 1977, 50 U.S.C. §§ 1701-1706; the Foreign Assistance Act of 1961, 22 U.S.C. § 2370; the Cuban Democracy Act of 1992, 22 U.S.C. §§ 6001-6010; the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. §§ 6021-6091; the Trade Sanctions Reform and Export Enhancement Act of 2000, 22 U.S.C. §§ 7201-7209; and the Cuban Asset Control Regulations, 31 C.F.R. Part 515. Federal statutes and regulations provide the federal Executive Branch with significant flexibility regarding the implementation and application of sanctions directed at Cuba, but do not authorize states to enforce their own sanctions against Cuba.

B. <u>The Cuba Amendment</u>

7. On May 1, 2012, in the Southern District of Florida, Florida Governor Rick Scott signed into law Committee Substitute for Committee Substitute for House Bill No. 959, "An act relating to state and local government relations with Cuba or Syria," which amends Section 287.135, Florida Statutes, effective July 1, 2012. The amendments to Section 287.135 can be found at Chapter 2012-196, Laws of Florida (the "Cuba Amendment").

8. The Cuba Amendment creates a state economic sanctions regime against Cuba. It provides, in relevant part, that "[a] company that, at the time of bidding or submitting a proposal for a new contract or a renewal of an existing contract, is . . . engaged in business operations in

3

Cuba . . . is ineligible for, and may not bid on, submit a proposal for, or enter into or renew a contract with an agency or local governmental entity for goods or services of $1 million or more." Ch. 2012-196, § 2(2), Laws of Fla. (amending § 287.135(2), Fla. Stat.).

9. Florida law defines the "compan[ies]" subject to the contracting bar to include any "entity or business association" and any "wholly-owned subsidiaries, majority-owned subsidiaries, parent companies, or affiliates of such entities or business associations." § 215.473(1)(c), Fla. Stat.; *see also* Ch. 2012-196, § 2(1), Laws of Fla. (incorporating definitions from § 215.473). Accordingly, the Cuba Amendment appears to penalize companies that do not themselves have business operations in Cuba if those companies have subsidiary corporations, parent corporations, or sibling corporations that conduct business operations in Cuba.

10. The Cuba Amendment defines "business operations" broadly to mean "engaging in commerce in any form in Cuba . . . , including, but not limited to, acquiring, developing, maintaining, owning, selling, possessing, leasing, or operating equipment, facilities, personnel, products, services, personal property, real property, military equipment, or any other apparatus of business or commerce." Ch. 2012-196, § 2(1)(b), Laws of Fla. (amending § 287.135(1)(b), Fla. Stat.).

11. To enforce the restrictions on companies engaged in business operations in Cuba, the Cuba Amendment provides that a company "must certify . . . that it does not have business operations in Cuba" when it "submits a bid or proposal for a contract or before the company enters into or renews a contract with an agency or governmental entity for goods or services of $1 million or more." Ch. 2012-196, § 2, Laws of Fla. (amending § 287.135(5), Fla. Stat.). If a company submits a false certification, it is subject to "[a] civil penalty equal to the greater of $2 million or twice the amount of the contract for which the false certification was submitted," as

4

well as a three-year bar on the ability to bid on any state or local contract.  Ch. 2012-196, § 2(5)(a), Laws of Fla. (amending § 287.135(5)(a), Fla. Stat.).

12. Section 287.135 contains a "savings clause" providing that: "This section becomes inoperative on the date that federal law ceases to authorize the states to adopt and enforce the contracting prohibitions of the type provided for in this section."  Ch. 2012-196, § 2(9), Laws of Fla. (amending § 287.135(9), Fla. Stat.).  The Cuba Amendment did not substantively alter this provision.

13. On the same day that Governor Scott signed the Cuba Amendment into law, he issued a signing statement indicating that the Cuba Amendment's "substantive restrictions . . . conflict with federal law"—namely, the "pervasive and overly permissive federal regulations" governing economic relations with Cuba.  Letter from Rick Scott, Florida Governor, to Ken Detzner, Florida Secretary of State, at 3 (May 1, 2012).  Despite this admission of unconstitutionality, the Governor stated that the Cuba Amendment "will become a state law on July 1, 2012" and that the State "will meet any challenge to this law in court as necessary."  *See* P. Mazzei & M. Caputo, *Gov. Rick Scott retreats from statement calling anti-Cuba law unenforceable*, Miami Herald, May 2, 2012 (quoting written statement of Governor Scott).

14. On June 4, 2012, the Florida Department of Transportation affirmatively told Plaintiff that it intends to implement the Cuba Amendment effective July 1, 2012.

C. The Cuba Amendment's Application to Plaintiff

15. Established in 1990, Plaintiff is a Florida corporation with its principal place of business in Coral Gables, Florida.  Plaintiff primarily provides construction and engineering services, focusing particularly on public infrastructure and transportation projects.

16.     Plaintiff is a longstanding Florida construction firm that has over 200 employees, many of whom have dedicated a significant portion of their careers to Plaintiff's continued growth and success.

17.     In 2011, Plaintiff had revenue of approximately $214.5 million, 100% of which was derived from public infrastructure and transportation projects.

18.     In 2012, Plaintiff was ranked as the 225th largest contractor in the United States by the Engineering News Record, the premier national trade magazine for the engineering and construction industry.

19.     Plaintiff does not conduct, and never has conducted, business operations in Cuba. Plaintiff's business operations fully comply with the laws and regulations implementing the U.S. embargo of Cuba.

20.     Plaintiff is a subsidiary of Odebrecht S.A., a diversified Brazilian conglomerate in the engineering, construction, water and wastewater, ethanol, real estate, chemical, and petrochemical fields. Odebrecht S.A. has operations—either itself, or through one of its many subsidiaries—in South America, Central America, North America, the Caribbean, Africa, Europe, and the Middle East. Of particular relevance here, one of Odebrecht S.A.'s subsidiaries, COI Overseas Ltd., is involved in the expansion of the Cuban Port of Mariel. Neither Odebrecht S.A. nor COI Overseas Ltd. conducts any business operations in Florida.

21.     Plaintiff is remote and distant from, and has no contact with, the corporate entity involved in the expansion of the Cuban Port of Mariel or any business operations in Cuba of any kind. The corporate structure is depicted below:

MIAMI 947948



22. Plaintiff frequently bids on and procures public contracts with state and local government agencies in Florida, including those under Defendant's supervision and control. For example, Plaintiff and its joint venture partners constructed the Adrienne Arsht Center for the Performing Arts, the American Airlines Arena, the stadium at Florida International University, and the Nassau Sound Bridge in Jacksonville, Florida. In addition, Plaintiff is currently carrying out its obligations under several public contracts with governmental entities in Florida. As another example, Plaintiff and its joint venture partners are the Managing General Contractor for the North Terminal Development Consolidation Program at the Miami International Airport and the general contractor for the Orange Line Phase I, Miami Intermodal Center, Earlington Heights Connector--the project connecting the Miami Metro Mover to the Miami International Airport.

23. Since its inception in 1990, Plaintiff has regularly submitted, and continues to regularly submit, bids and proposals for contracts with State of Florida agencies and local

7

governments in Florida. Since 1990, Plaintiff, by itself, or with joint venture partners, has been awarded over 60 projects with a total value of about $4.94 billion. Of that amount, 35 projects have been with State of Florida agencies and local governments in Florida with total contract amounts of $3.9 billion.

24. Plaintiff also has a long history of bidding on, being awarded, and successfully completing FDOT projects. In the past, Plaintiff has been awarded and completed FDOT projects with a combined contract amount of more than $180 million.

25. Plaintiff has also been preparing bids and proposals for many significant future Florida public construction projects. In particular, Plaintiff intends to bid on or pursue the following FDOT projects this year:

| # | Project Name | Client | Engineer's Estimate | Bid or Pursuit Date |
|---|---|---|---|---|
| 1 | Veterans Hwy - Add Lanes & Reconstruct From N. Barry to S. Linebaugh | FDOT | $70,000,000 | July 2012 |
| 2 | Veterans Hwy - Add Lanes & Reconstruct From Memorial to N. Barry | FDOT | $58,000,000 | July 2012 |
| 3 | I-75 Managed Lanes - Broward, Miami-Dade and Palmetto | FDOT | $870,000,000 | Fall 2012 |
| 4 | SR-826/Palmetto Expressway Managed Lanes | FDOT | $265,000,000 | Fall 2012 |
| 5 | I-4 Ultimate Improvements | FDOT | $2,150,000,000 | Fall 2012 |

Plaintiff has a well-documented history of submitting bids and receiving State of Florida agency and local government entity construction contracts, including FDOT contracts. Further, Plaintiff

8

intends to bid on approximately $3.4 billion worth of FDOT work this year, including bids on projects managed by FDOT District Six located in the Southern District of Florida.

26.     If the Cuba Amendment is enforceable and its contractual prohibitions are applied to Plaintiff, Plaintiff will be prohibited from submitting the bids it has been preparing and will be preparing for FDOT and other local government projects this year.  In particular, because Plaintiff and COI Overseas Ltd. are under common control by virtue of sharing the same parent company—Odebrecht S.A.—and because the Cuba Amendment defines a "company" broadly to include, among other things, affiliates, it appears that COI Overseas Ltd.'s business operations in Cuba will be imputed to Plaintiff for purposes of triggering the contracting bar under the Cuba Amendment.  Therefore, and notwithstanding Plaintiff's compliance with all federal laws, Plaintiff will be "ineligible for, and may not bid on, submit a proposal for, or enter into or renew a contract with an agency or local governmental entity for goods or services of $1 million or more." Ch. 2012-196, § 2(c)(2), Laws of Fla. (amending § 287.135(2), Fla. Stat.).

27.     The Cuba Amendment is unconstitutional and unenforceable.

28.     Under the Cuba Amendment, Plaintiff has no adequate remedy at law to challenge the taking of its property rights through its exclusion from bidding on contracts with State of Florida agencies and local governments because the denial of Plaintiff's constitutional rights cannot be remedied through legal relief.

29.     Application of the Cuba Amendment to Plaintiff will cause it actual and irreparable injury.

30.     Actual injury has already occurred because Plaintiff's ability to form relationships with potential partners, subcontractors, suppliers and designers for projects to be bid is being adversely affected, as well as Plaintiff's ability to retain and hire employees.  Based on the

9

anticipated effective date of the Cuba Amendment, such entities and persons have raised concerns about whether to team with Plaintiff for purposes of pursuing contracts with State of Florida agencies and local governments, including FDOT, for which bids on and proposals are due after July 1, 2012, the effective date of the Cuba Amendment.

31. Further actual injury is imminent because Plaintiff regularly bids on and submits proposals for contracts with State of Florida agencies, including FDOT and its District Offices located in the Southern District of Florida, and local governments and would continue to bid on and submit proposals for such contracts. The Cuba Amendment, if enforceable and applied to Plaintiff, would make such contracts unavailable to Plaintiff.

32. Further actual injury is also imminent because the Cuba Amendment, if enforceable and applied to Plaintiff, would prevent Plaintiff from participating in the procurement process for all significant contracts with the State of Florida agencies and local governments.

## CAUSES OF ACTION

### COUNT I
### The Cuba Amendment Violates the Supremacy Clause

33. Plaintiff realleges Paragraphs 1-32 as if fully set forth herein.

34. This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2201 and 42 U.S.C. § 1983 to have the Cuba Amendment declared an unconstitutional violation of the Supremacy Clause in Article VI, Clause 2 of the United States Constitution and to prevent the Cuba Amendment's implementation and enforcement.

35. The Supremacy Clause of the Constitution establishes federal law as "the supreme law of the land," which preempts state law in the event of a conflict. U.S. Const. art. VI, cl. 2.

36. The Cuba Amendment frustrates federal statutory objectives regarding economic sanctions against Cuba, impedes the implementation of an express executive branch policy concerning relations with Cuba, and regulates in a field occupied exclusively by federal law.

37. The Cuba Amendment therefore is preempted by federal law under the Supremacy Clause and is unconstitutional and unenforceable.

WHEREFORE, Plaintiff requests entry of a declaratory judgment declaring the Cuba Amendment unconstitutional and unenforceable and enjoining Defendant from implementing or enforcing it.

## COUNT II
### The Cuba Amendment Violates the Foreign Affairs Power

38. Plaintiff realleges Paragraphs 1-32 as if fully set forth herein.

39. This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2201 and 42 U.S.C. § 1983 to have the Cuba Amendment declared an unconstitutional violation of the Foreign Affairs Power in Article I, Sections 8-10, and Article II, Section 2 of the United States Constitution and to enjoin the Cuba Amendment's implementation and enforcement.

40. The Constitution grants the federal government exclusive and plenary power over foreign affairs. U.S. Const. art. I, §§ 8, 9, 10; U.S. Const. art. II, § 2.

41. In both its purpose and effect, the Cuba Amendment affects foreign affairs by imposing penalties on businesses that have business operations in Cuba in order to influence the conduct of the Cuban government through economic pressure. The Cuba Amendment has more than an incidental or indirect effect on foreign affairs.

42. The Cuba Amendment therefore violates the federal government's foreign affairs power and so is unconstitutional and unenforceable.

WHEREFORE, Plaintiff requests entry of a declaratory judgment declaring the Cuba Amendment unconstitutional and unenforceable and enjoining Defendant from implementing or enforcing it.

## COUNT III
### The Cuba Amendment Violates the Foreign Commerce Clause

43. Plaintiff realleges Paragraphs 1-32 as if fully set forth herein.

44. This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2201 and 42 U.S.C. § 1983 to have the Cuba Amendment declared an unconstitutional violation of the dormant Foreign Commerce Clause in Article I, Section 8 of the United States Constitution and to prevent the Cuba Amendment's implementation and enforcement.

45. The Constitution grants Congress the power "to regulate Commerce with foreign Nations." U.S. Const. art. I, § 8, cl. 3.

46. The Cuba Amendment discriminates against foreign commerce by discouraging lawful foreign trade with Cuba, by attempting to regulate activity that takes place entirely beyond Florida's borders, and by impairing federal uniformity in trade with Cuba.

47. The Cuba Amendment therefore violates the Foreign Commerce Clause and so is unconstitutional and unenforceable.

WHEREFORE, Plaintiff requests entry of a declaratory judgment declaring the Cuba Amendment unconstitutional and unenforceable and enjoining Defendant from implementing or enforcing it.

## COUNT IV
## The Cuba Amendment Is Inoperative By Its Own Terms

48. Plaintiff realleges Paragraphs 1-32 as if fully set forth herein.

49. The savings clause in the statute modified by the Cuba Amendment provides that "th[e] section becomes inoperative on the date that federal law ceases to authorize the states to adopt and enforce the contracting prohibitions of the type provided for in this section."  Ch. 2012-196, § 2(9), Laws of Fla. (amending § 287.135(9), Fla. Stat.).

50. Federal law does not authorize Florida to adopt and enforce the Cuba Amendment.  To the contrary, the Cuba Amendment violates the Supremacy Clause, the federal Foreign Affairs Power, and the Foreign Commerce Clause.

51. The Cuba Amendment therefore is inoperative by its own terms pursuant to the savings clause and is therefore unenforceable.

WHEREFORE, Plaintiff requests entry of a declaratory judgment declaring the Cuba Amendment unconstitutional and unenforceable and enjoining Defendant from implementing or enforcing it.

## **PRAYER FOR RELIEF**

WHEREFORE, in light of the foregoing, Plaintiff respectfully requests that this Court:

A. Adjudge and declare that the Cuba Amendment violates the Constitution and laws of the United States, is void, and has no further legal effect.

B. Adjudge and declare that the Cuba Amendment is inoperative pursuant to the statute's savings clause, Section 287.135(9), Florida Statutes.

13

C. Enjoin Defendant from requiring that companies execute a certification regarding the companies' business operations in Cuba in order to bid on, submit a proposal for, or enter into or renew a public contract.

D. Enjoin Defendant from in any other way seeking to prohibit the award or renewal of public contracts based on whether companies have business operations in Cuba.

E. Award Plaintiff the costs of litigation, including reasonable costs, expenses, disbursements, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

F. Provide such other relief as may be just and proper.

Dated:  June 5, 2012

Respectfully submitted,

WHITE & CASE LLP

/s/ *Raoul G. Cantero*
Raoul G. Cantero
Florida Bar No. 552356
T. Neal McAliley
Florida Bar No. 172091
200 South Biscayne Blvd.
Suite 4900
Miami, Florida 33131-2352
Email: rcantero@whitecase.com
Email: nmcaliley@whitecase.com

MOYE, O'BRIEN, O'ROURKE,
   PICKERT & DILLON LLP
James E. Moye
Florida Bar No. 801356
800 South Orlando Avenue
Maitland, FL 32751
Email:  jmoye@moopd.com

*Counsel for Odebrecht Construction, Inc.*

14